UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SERINA A. TEIGEN,

                Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

                Defendant.

Case No. 3:11-cv-05120-KLS

ORDER REVERSING DEFENDANT'S DECISION TO DENY BENEFITS AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS

Plaintiff has brought this matter for judicial review of defendant's denial of her application for supplemental security income ("SSI") benefits. Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. After reviewing the parties' briefs and the remaining record, the Court hereby finds that for the reasons set forth below, defendant's decision to deny benefits hereby is REVERSED, and this matter hereby is REMANDED for further administrative proceedings.

## FACTUAL AND PROCEDURAL HISTORY

On April 27, 2006, plaintiff filed an application for SSI benefits, alleging disability as of April 3, 2006, due to asthma, hypertension, diabetes, and depression. See Administrative Record ("AR") 12, 121. Her application was denied upon initial administrative review and on reconsideration. See AR 12, 55, 59. A hearing was held before an administrative law judge

ORDER - 1

("ALJ") on October 9, 2009, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. See AR 24-52.

On December 3, 2009, the ALJ issued a decision in which plaintiff was determined to be not disabled. See AR 12-19. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on January 22, 2011, making the ALJ's decision defendant's final decision. See Tr. 1; see also 20 C.F.R. § 416.1481. On February 10, 2011, plaintiff filed a complaint in this Court seeking judicial review of the ALJ's decision. See ECF #1-#3. The administrative record was filed with the Court on April 20, 2011. See ECF #10. The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues the ALJ's decision should be reversed and remanded to defendant for an award of benefits or, in the alternative, for further administrative proceedings because the ALJ erred: (1) in finding her migraine headaches, depression and posttraumatic stress disorder ("PTSD") to be non-severe impairments; (2) in evaluating the medical evidence in the record regarding her obesity; (3) in assessing her credibility; and (4) in assessing her residual functional capacity. The Court agrees the ALJ erred in determining plaintiff to be not disabled, but, for the reasons set forth below, finds that while defendant's decision should be reversed, this matter should be remanded for further administrative proceedings.

## DISCUSSION

This Court must uphold defendant's determination that plaintiff is not disabled if the proper legal standards were applied and there is substantial evidence in the record as a whole to support the determination. See Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. See Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767

ORDER - 2

F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. See Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold defendant's decision. See Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.  The ALJ's Step Two Determination

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id. At step two of that process, the ALJ must determine if an impairment is "severe." 20 C.F.R. § 416.920. An impairment is "not severe" if it does not "significantly limit" a claimant's mental or physical abilities to do basic work activities. 20 C.F.R. § 416.920(a)(4)(iii), (c); see also Social Security Ruling ("SSR") 96-3p, 1996 WL 374181 *1. Basic work activities are those "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b); SSR 85- 28, 1985 WL 56856 *3.

An impairment is not severe only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual[']s ability to work." See SSR 85-28, 1985 WL 56856 *3; see also Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.1988). Plaintiff has the burden of proving that her "impairments or their symptoms affect her ability to perform basic work activities." Edlund v. Massanari, 253 F.3d 1152, 1159-60 (9th Cir. 2001); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998). The step two inquiry described above, however, is a *de minimis* screening device used to dispose of groundless claims. See Smolen, 80 F.3d at 1290.

ORDER - 3

A. <u>Migraine Headaches</u>

As noted above, the ALJ found plaintiff's migraine headaches to be non-severe. See AR 14. The ALJ went on to state that while the record showed she had been diagnosed with having such headaches, there was no mention therein "of the frequency" thereof, that plaintiff testified she was "currently not on any medication to treat" them and that there was "no evidence" they "cause[d] more than a minimal limitation in her ability to perform basic work activities." AR 14-15. Plaintiff points out that the ALJ was incorrect in stating there was no mention in the medical record of the frequency of his migraine headaches. For example, in mid-August 2007, plaintiff reported that the approximate frequency of her migraine headaches were "once or twice a month," and the average duration thereof was "about four hours." AR 508.

The Court disagrees, though, that the ALJ erred in finding plaintiff's migraine headaches to be non-severe in part on the basis that she was not taking any medication for them. Plaintiff points to one late August 2008 progress note, in which it was mentioned that "relpax [would] not help her headaches and it made her feel like she was going to have a 'seizure'." AR 544. It is true that it is improper for an ALJ to deny benefits for failure to pursue treatment, without first examining whether the claimant has a good reason for not doing so See <u>Byrnes v. Shalala</u>, 60 F.3d 639, 641 (9th Cir. 1995); <u>Carmickle v. Commissioner, Social Sec. Admin.</u>, 533 F.3d 1155, 1162 (9th Cir. 2008); SSR 96-7p, 1996 WL 374186 *7 (no inferences must be drawn by ALJ regarding claimant's symptoms and their functional effects from his or her failure to follow prescribed course of treatment, without first considering any explanations claimant may provide or other information in record which may explain that failure).

The record, however, also contains a late June 2006 progress note, in which plaintiff is noted to have reported that her migraine headaches were "better", and that they had "improved

ORDER - 4

significantly since beginning birth control pills." AR 267.  Thus, it was reasonable – i.e., there was sufficient evidence in the record – for the ALJ to conclude plaintiff's testimony that she was not currently on any medication for her migraines was because she did not need it, rather than because a medication she took therefor in the past was ineffective or caused adverse side effects. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (ALJ is responsible for determining credibility and resolving ambiguities and conflicts in medical evidence); Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982) (where medical evidence is not conclusive, questions of credibility and resolution of conflicts are solely functions of ALJ); Morgan v. Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999).

In addition, as the ALJ expressly found, there is no evidence in the record that plaintiff's migraine headaches caused more than minimal limitations in her ability to perform basic work-related activities.  For example, although Robert Crist, M.D., diagnosed plaintiff with recurrent migraine headaches when he examined her in mid-August 2007, he did not find this impairment resulted in any specific work-related limitations. See AR 510-11.  Nor, for that matter, has any other medical opinion source in the record. See, e.g., AR 512-19.  Accordingly, the Court finds the ALJ did not err in finding her migraine headaches to be non-severe.

B. Depression and PTSD

In regard to plaintiff's alleged depression and PTSD, the ALJ found in relevant part:

> The claimant's medically determinable mental impairments of depression and posttraumatic stress disorder (PTSD), considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere.
>
> The report of consultative examiner Norman F. Peterson, MD is given little weight as it is not consistent with the opinion of the claimant's own mental health treatment provider.  Dr. [Peterson] opined that the claimant had a

ORDER - 5

Global Assessment of Functioning (GAF) Score of 35,[1] and that she was barely able to function on a day-to-day basis in maintaining her household (Ex. 5F 15). In the same report he notes that the claimant is oriented to time, place and person and has a good memory for remote and recent events, and can recall three out of three objects after five minutes (Ex. 5F/4). The claimant was also able to recall five digits forward and repeat them accurately backward (Ex. 5F/4). Dr. Peterson found that although the claimant could not subtract 7 serially from 100, she was able to subtract 3 serially from 25, she could spell WORLD forward and backward, and follow a three-step command (Ex. 5F/4). Dr. Peterson's objective mental status findings are not congruent with his assessment of a GAF of 35. The claimant's mental health providers at Peninsula Mental Health opined GAF scores of 45 and 48 (Ex. 4F/16, 25).[2] In addition, the claimant's own mental health provider, Linda Scott, MHP, noted that the claimant's presentation was not consistent with a diagnosis of major depressive disorder, because her mood was ebullient, her observed energy level was good, and she pursued housing with energy, focus and success. (Ex. 4F/6). Ms. Scott also noted that the claimant was looking forward to establishing her new home and was readying herself for the move and she was enjoying socializing with a Healthy Families volunteer who was lining up furniture for her (Ex. 4F/6). Ms. Scott's observations regarding the claimant's mood and activities are not consistent with the assigned GAF scores of 45 and 48, and thus these GAF scores are given little weight.

[State agency] psychologist Michael Regets, PhD, reviewed the claimant's mental health records up to the date of his opinion, and found the claimant's depression and PTSD to be in remission and therefore not severe impairments (Ex. 7F/l). He noted that the claimant appeared "to put her worst symptoms forward" at her appointment with Dr. Peterson, and the claimant was able to look after her daughters, perform household chores, and manage her finances (Ex. 7F/13). Dr. Regets noted the lack of consistency in claimant's presentation suggested that the claimant's psychiatric impairments are nonsevere or well controlled with medication (Ex. 7F/13).

---

[1] A GAF score is "a subjective determination based on a scale of 100 to 1 of 'the [mental health] clinician's judgment of [a claimant's] overall level of functioning.'" Pisciotta v. Astrue, 500 F.3d 1074, 1076 n.1 (10th Cir. 2007). It is "relevant evidence" of the claimant's ability to function mentally. England v. Astrue, 490 F.3d 1017, 1023, n.8 (8th Cir. 2007). "A GAF score of 31-40 indicates some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas such as work or school, family relations, judgment, thinking or mood." White v. Commissioner of Social Sec., 572 F.3d 272, 276 (6th Cir. 2009) (quoting Edwards v. Barnhart, 383 F.Supp.2d 920, 924 n. 1 (E.D.Mich. 2005)); see also Salazar v. Barnhart, 468 F.3d 615, 624 n.4 (10th Cir. 2006) ("A GAF score of 31-40 is extremely low.").

[2] "A GAF score of 41-50 indicates '[s]erious symptoms . . . [or] serious impairment in social, occupational, or school functioning,' such as an inability to keep a job." Pisciotta, 500 F.3d at 1076 n.1 (10th Cir. 2007) (quoting Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000) at 34); see also Cox v. Astrue, 495 F.3d 614, 620 n.5 (8th Cir. 2007) ("[A] GAF score in the forties may be associated with a serious impairment in occupational functioning.").

ORDER - 6

> In making this finding, the undersigned has considered . . . four broad functional areas . . .
>
> The first functional area is activities of daily living. In this area, the claimant has mild limitation. The claimant is able to care for her two children, prepare meals, fold laundry, do dishes, vacuum, dust, sweep and mop (Ex. 5E/3). The claimant is able to use public transportation and is able to go shopping (Ex. 5E14). The claimant noted that she is not able to fit in all vehicles, and sometimes needs someone to help her carry heavy purchases (Ex. 5E14).
>
> The next functional area is social functioning. In this area, the claimant has mild limitation. The claimant testified that she lives with her fiancée. She noted that she will talk on the phone with people for a few minutes, or sit and have coffee with them in person every week, and sometimes daily (Ex. 5E/5).
>
> The third functional area is concentration, persistence or pace. In this area, the claimant has mild limitation. The claimant is able to pay bills, count change and handle a savings account (Ex. 5E14). The claimant is able to watch television, and she does crossword puzzles and plays card games (Ex. 5E/5). At the hearing, the claimant testified that she is only able to be on the computer for a few minutes, but she is able to use the digital game her fiancée gave her.
>
> The fourth functional area is episodes of decompensation. In this area, the claimant has not experienced any episodes of decompensation which have been of extended duration.
>
> Because the claimant's medically determinable mental impairments cause no more than "mild" limitation in any of the first three functional areas and "no" episodes of decompensation which have been of extended duration in the fourth area, they are nonsevere . . .

AR 15-16.

As noted above, in resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes

ORDER - 7

v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. See Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

Plaintiff argues the ALJ erred in not making any mention of an initial intake psychiatric evaluation performed by Margaret M. Depew, A.R.N.P., in mid-March 2005, and another intake evaluation performed by a different mental health practitioner in early April 2006, in which she

ORDER - 8

was assessed with a GAF score of 45 and one of 48 respectively. See AR 272-81, 286-90. But the ALJ did address those evaluations, or at least the GAF scores contained therein. See AR 15. In addition, because those GAF scores are the only real indication of work-related limitations in either evaluation, the ALJ did not have to expressly address the other findings or comments that are contained therein. See Vincent, 739 F.3d at 1394-95 (ALJ must only explain why significant probative evidence has been rejected).

The ALJ, furthermore, gave valid reasons for rejecting both GAF scores, pointing out that plaintiff's own mental health provider found her presentation to be inconsistent with a diagnosis of major depressive order, let alone one resulting in such low GAF scores. See AR 15; AR 266-67, 270. Ms. Depew herself reported subsequent to the initial intake evaluation she performed, that Paxil was "working good for the depression," with plaintiff stating that she was "doing well" at the time. AR 285; see also AR 284 ("Reports continued benefit from Paxil."). Thus, no error was committed by the ALJ here.

Plaintiff goes on to argue the ALJ also erred by not mentioning the fact that her treating physician, Stan Garlick, M.D., repeatedly described depression as being one of her major health problems, and that he continued to prescribe her Paxil. See AR 343, 348, 447, 449. But the mere diagnosis of an impairment – or the description thereof as a major health problem – without more in the way of specifically noted work-related limitations, is insufficient to demonstrate a finding of severity, let alone disability. See Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993). The same is true in regard to prescribed medication. That is, while such a prescription may indicate the presence of a mental health impairment, it says little about the impact, if any, the impairment may have on the claimant's ability to work.

Lastly, plaintiff argues the ALJ erred as well in failing to mention the fact that Dr. Crist

ORDER - 9

diagnosed her with both chronic depression and anxiety. Unlike Dr. Garlick, Dr. Crist did state in the evaluation report he completed that plaintiff's "chronic depression and anxiety, as well as [her] emotional lability" and certain of her physical impairments, "may impose some workplace environmental limitations at this time." AR 511. But Dr. Crist failed to indicate what those limitations might be, the probability they would occur and when they would occur or the extent to which those limitations were attributed to plaintiff's mental health impairments. Nor has any other medical source in the record found environmental limitations resulting from plaintiff's mental impairments. Therefore, the Court finds any error by the ALJ in failing to specifically mention this evidence to be harmless. See Stout v. Commissioner, Social Security Admin., 454 F.3d 1050, 1055 (9th Cir. 2006) (error harmless where non-prejudicial to claimant or irrelevant to ALJ's ultimate disability conclusion).

II. The ALJ's Assessment of Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. See Sample, 694 F.2d at 642. The Court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580. In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. See id. at 579. That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. Tonapetyan , 242 F.3d at 1148.

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester, 81 F.3d at 834 (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.; see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the

ORDER - 10

claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834. The evidence as a whole must support a finding of malingering. See O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen, 80 F.3d at 1284]. The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. See id.

Here, the ALJ discounted plaintiff's credibility in part on the basis that her allegations regarding her symptoms and limitations were not consistent with the objective medical evidence in the record. See AR 18; Regennitter v. Commissioner of SSA, 166 F.3d 1294, 1297 (9th Cir. 1998) (determination that claimant's complaints are inconsistent with clinical observations can satisfy clear and convincing requirement). Plaintiff argues the ALJ did not give any explanation for finding the medical evidence in the record indicated she is far more functional than indicated by Dr. Peterson's assessment. See AR 18. As discussed above, however, the ALJ did not err in rejecting Dr. Peterson's assessment or in finding plaintiff had no severe mental impairment. Nor as explained elsewhere herein, did the ALJ err in evaluating the medical evidence in the record concerning her physical limitations, except with respect to plaintiff's ability to reach. The ALJ thus properly discounted plaintiff's credibility due to inconsistencies with the medical evidence in the record regarding her alleged back pain as well.

Plaintiff is correct that the ALJ may not reject her subjective complaints "*solely* because the degree of pain [or other symptoms] alleged is not supported by objective medical evidence." Orteza v. Shalala, 50 F.3d 748, 749-50 (9th Cir. 1995) (quoting Bunnell v. Sullivan, 947 F.2d

ORDER - 11

341, 346-47 (9th Cir.1991) (en banc)) (emphasis added); see also Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir.2001); Byrnes v. Shalala, 60 F.3d 639, 641-42 (9th Cir. 1995) (while Bunnell was couched in terms of subjective complaints of pain, its reasoning extended to claimant's non-pain complaints as well); Fair, 885 F.2d 597, 601 (9th Cir. 1989). But as discussed below, in this case the ALJ provided other valid reasons for discounting plaintiff's credibility.[3]

The ALJ discounted plaintiff's credibility in part as well on the basis that she testified at the hearing that she "had no treatment with a [mental health] counselor for the last 2 to 3 years." AR 18. Failure to assert a good reason for not seeking treatment "can cast doubt on the sincerity of the claimant's pain testimony." Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989); see also Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) (upholding ALJ in discounting credibility in part due to lack of consistent treatment; noting fact that claimant's pain was not sufficiently severe to motivate her to seek treatment was powerful evidence concerning extent to which she was in pain); Meanal v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ properly considered failure of claimant to request serious medical treatment for supposedly excruciating pain).

Plaintiff argues the ALJ's finding here ignores the ongoing prescriptions for medications for her depression provided by her treating physician. But while it may be that such medications continued to be prescribed for her, the Court finds the ALJ did not err in viewing the absence of mental health counseling as evidence that plaintiff's mental health condition was not as severe as alleged. Indeed, the record supports the ALJ in this regard. For example, plaintiff was reported in early September 2006, to have "sought mental health treatment" and to be "intensely involved

---

[3] Plaintiff further asserts the ALJ fails to account here for the combined effects of her severe health problems on her allegations of pain, but fails to explain with any specificity how this is so. Accordingly, the Court declines to give any weight to this argument. See Carmicle v. Commissioner of Social Sec. Admin., 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (issue not argued with specificity in briefing will not be addressed); Paladin Associates., Inc. v. Montana Power Co., 328 F.3d 1145, 1164 (9th Cir. 2003) (by failing to make argument in opening brief, objection to court's grant of summary judgment was waived); Kim v. Kang, 154 F.3d 996, 1000 (9th Cir.1998) (matters not specifically and distinctly argued in opening brief ordinarily will not be considered).

ORDER - 12

at the local mental health center." AR 295. It is not clear from the record why plaintiff stopped being involved in such treatment, nor has she provided any reason for discontinuing it, let alone good reasons. See Fair, 885 F.2d at 603.

The record, furthermore, shows plaintiff has experienced substantial improvement in her mental health condition. See Morgan, 169 F.3d at 599 (ALJ may discount claimant's credibility on basis of medical improvement); Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998). In late April 2005, she reported, as noted above, that she was "doing well," that Paxil was "working good for the depression" and that Trazadone was helping her sleep "really well." AR 285. She also denied feeling depressed and reported "good mood stability." Id. Plaintiff reported in late June 2005, that she was received "continued benefit from Paxil." AR 284. Also as noted above, Ms. Scott noted in early May 2006, that her mood was "ebullient", that her energy level was "good", that she was pursuing housing "with energy, focus and success," that she was "enjoying socializing with [a] Healthy Families volunteer," and that her presentation was "not consistent with [a diagnosis] of major depressive disorder." AR 270.

In late June 2006, plaintiff again was observed to be "[s]miling broadly and chuckling," and she reported "continuing to manage all aspects of her life except health problems well" and "satisfaction with major life issues at this time." AR 267. In early July 2006, plaintiff again was noted to be "[s]miling broadly" and "upbeat", with "[n]o overt signs of depression." AR 266. As there is no evidence of any worsening of plaintiff's mental health condition subsequent thereto – except for the assessment of Dr. Peterson, which as discussed above, the ALJ properly rejected – here too the ALJ did not err in discounting plaintiff's credibility on the basis that lack of mental health counseling indicated that condition was not as severe as alleged.

The ALJ found plaintiff's credibility was further undermined by her telling Ms. Scott in

ORDER - 13

early July 2006, "that she planned to buy a home with the money she anticipated from her divorce settlement, and she planned to hide that money from" the Washington State Department of Social and Health Services. AR 18, 266. The ALJ may consider motivation and the issue of secondary gain in rejecting symptom testimony. See Tidwell, 161 F.3d at 602; Matney on Behalf of Matney v. Sullivan, 981 F.2d 1016, 1020 (9th Cir. 1992). Plaintiff argues the ALJ offered no assessment of the impact of this statement on her symptoms from depression and PTSD, but it is unclear what she means by this or what her statement regarding what she planned to do with any money she received has to do with her depression and/or PTSD.[4] Accordingly, for all the above reasons, the Court finds the ALJ properly discounted plaintiff's credibility.

III. The ALJ's Assessment of Plaintiff's Residual Functional Capacity

If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id. It thus is what the claimant "can still do despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id. However, an inability to work must result from the claimant's "physical or mental impairment(s)." Id. Thus, the ALJ

---

[4] Plaintiff further argues the ALJ did not mention the intake assessment provided by Ms. Depew, who, as discussed above, assessed her with a GAF score of 45 (see AR 286-90), and that by another mental health therapist, who, also as discussed above, assessed her with a GAF score of 48 (see AR 272-81). But again as discussed above, the only evidence of work-related limitations those intake assessments provided are the GAF scores contained therein, which the ALJ properly rejected. Accordingly, plaintiff is incorrect that the ALJ did not mention this evidence or that the he with respect thereto in terms of assessing her credibility.

ORDER - 14

must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

The ALJ in this case assessed plaintiff with the residual functional capacity:

**. . . to lift 20 pounds occasionally and 10 pounds frequently; she is able to stand or walk with normal breaks for 2 hours in an 8 hour workday, and can sit with normal breaks for 6 hours in an 8 hour workday. The claimant can occasionally climb ramps or stairs, but can never climb ladders, ropes or scaffolding. The claimant is able to occasionally balance, stoop, kneel, crouch and crawl, but is precluded from frequently reaching overhead. Her ability to handle, finger and feel is uulimited. The claimant should avoid concentrated exposure to fumes, odors, dust and gases.**

AR 17 (emphasis in original). Plaintiff argues the ALJ erred here by failing to properly account for the effects of her obesity. In support of her argument, plaintiff notes her body mass index ("BMI") generally was at or above 40, indicating that she was at the greatest risk for developing obesity-related problems. Plaintiff also points out she suffered from diabetes mellitus under poor control. But as discussed above, the mere diagnosis of an impairment is insufficient to establish disability. In addition, while a BMI of 40 may place plaintiff at the greatest *risk* for developing obesity-related problems, that is not the same as *having* those problems. Indeed, plaintiff has not shown such problems have yet occurred. Nor has plaintiff shown her poorly controlled diabetes has resulted in any significant work-related limitations.

In assessing the above residual functional capacity, the ALJ stated it was supported by the objective medical evidence in the record, including the opinion of Dr. Crist and that of non-examining physician, Robert Hoskins, M.D. See AR 18-19. Plaintiff argues the RFC assessment the ALJ gave fails to account for all of Dr. Crist's diagnoses and the limitations he found resulted

ORDER - 15

therefrom. The only limitation plaintiff points to as an example of this, though, is the limitation on reaching and lifting with her right arm and on feeling, grasping and fingering objects. But the Court finds no error on the part of the ALJ in regard to lifting, as contrary to plaintiff's assertion, Dr. Crist expressly found she was "able to satisfactorily feel, grasp, and finger objects." AR 511. As such, the ALJ did not err in failing to adopt any limitation in this area.

As for Dr. Crist's opinion that plaintiff had a "limited ability to reach or lift with her right arm," he indicated such limitation would be only occasional in frequency. Id. Dr. Crist opined as well that plaintiff "could lift 15-25 pounds occasionally." Id. He did not place any limitation on her ability to lift frequently, while Dr. Hoskins based on his review of the record found she could lift 10 pounds frequently. See AR 513. The ALJ's finding that she could lift 20 pounds occasionally and 10 pounds frequently thus adequately accounts for the lifting limitations the record supports, as shown by the findings of Dr. Crist and Dr. Hoskins. On the other hand, it is not clear why the ALJ limited plaintiff to occasional reaching overhead, as Dr. Crist did not qualify his restriction on reaching in this way, and Dr. Hoskins found plaintiff was limited in reaching "in all directions (*including* overhead)." See AR 511, 515 (emphasis added). The Court thus finds the ALJ erred in regard to the medical evidence in the record concerning her ability to reach.

Plaintiff goes on to argue that the ALJ erred in failing to include any limitations resulting from her asserted need for frequent bathroom breaks, inability to reach in front, inability to grasp and finger, and feelings of being tired and incapable of activity. But as discussed above, the ALJ did not err in discounting plaintiff's credibility, and therefore he was not required to adopt any of these additional alleged limitations. Further, except for possibly the claimed inability to reach in front, plaintiff has pointed to no medical evidence in the record to support any of the other above

ORDER - 16

alleged limitations. Likewise, plaintiff has failed to show any support in the medical evidence in the record for the existence of work-related limitations stemming from her migraine headaches, which, as discussed above, the ALJ properly found to be non-severe.

Plaintiff argues as well that the ALJ failed to include any limitations stemming from her diabetes, including a need to urinate frequently. But while this alleged need may also have been noted by Dr. Garlick, once more any such limitation resulting from that need is based solely on plaintiff's own self-report and not from any objective medical evidence in the record. See, e.g., AR 41, 530, 553. Accordingly, here too the ALJ was not required to adopt any limitations due to plaintiff's diabetes in light of his adverse credibility determination. The same is true in regard to the other limitations plaintiff has asserted stem from that condition.

IV.     The ALJ's Step Four Determination

At step four of the sequential disability evaluation process, the ALJ found plaintiff's past relevant work did not require the performance of work-related activities precluded by the RFC he had assessed. See AR 19. Plaintiff has the burden at step four to show that she is unable to return to her past relevant work. Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999). The ALJ in this case posed a hypothetical question to the vocational expert at the hearing, which contained substantially the same limitations as were included in the ALJ's assessment of plaintiff's residual functional capacity. See AR 46-47. In response to that question, the vocational expert testified that an individual with those limitations – and who had the same age, education and past relevant work as plaintiff – would be able to perform that work. See id. The ALJ based his determination at step four on the vocational expert's testimony. See AR 19. As discussed above, however, the ALJ erred in evaluating the medical opinion source evidence in the record concerning plaintiff's ability to reach. Accordingly, it is not at all clear that the hypothetical question the ALJ posed to

ORDER - 17

the vocational expert accurately described all of plaintiff's physical limitations, and thus that the vocational expert's testimony was supported by substantial evidence.

V.   This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues remain with respect to plaintiff's ability to reach, her residual functional capacity and her ability to perform her past relevant work, remand for further administrative proceedings is warranted. In addition, if on remand it is found that plaintiff is unable to return to her past relevant work, then defendant shall proceed on to step five of the sequential disability evaluation process to determine if she is capable of performing other jobs existing in significant numbers in

ORDER - 18

the national economy.

## CONCLUSION

For the reasons set forth above, the Court hereby finds the ALJ improperly concluded plaintiff was not disabled. Accordingly, defendant's decision hereby is REVERSED and this matter hereby is REMANDED for further administrative proceedings in accordance with the findings contained herein.

DATED this 28th day of November, 2011.

Karen L. Strombom
United States Magistrate Judge

ORDER - 19